UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMMA BEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. A. No. 1:19-cv-00256-CKK |
| | ) |
| UNITED STATED DEPARTMENT | ) |
| OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"),

Winchester, Virginia.  My previous declaration filed in support of a Consent Motion to Vacate

Briefing Schedule in this matter explains my employment history.[1]  (ECF No. 18-1.)  This

Declaration supplements, and hereby incorporates by reference, the information previously

provided in my first declaration dated April 9, 2020, herein referenced as, "First Seidel

Declaration." This declaration is my second declaration, but the third overall declaration filed in

this instant action.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 235

FBI employees, supported by approximately 94 contractors, who staff a total of twelve (12)

Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational

---

[1] Subsequent to the filing of my prior declaration in this instant action, I became the Section
Chief of the FBI's Record/Information Dissemination Section on Monday, July 27, 2020.

1

service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act ("FOIA") as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based on my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA requests for records released to the Church Committee or the Pike Committee labeled SEN/HOUSTUDY, SEN/HOUSTUDY 75, or Senate/House Study and FBI File Number 62-116464.

(4)     In response to Plaintiff's requests, the FBI processed a total of 382 pages of responsive records. Of the pages processed and released, Plaintiff continues to challenge specific exemptions asserted within nine (9) records, consisting of thirty-two (32) pages, wherein Plaintiff is challenging the FBI's assertion of FOIA Exemptions (b)(3) and/or (b)(7)(E), specifically, FOIA Exemption Coded Categories (b)(3)-1, (b)(7)(E)-2 and (b)(7)(E)-3 on twenty-four (24) pages. Of the twenty-four (24) pages, twenty-three (23) pages were released in part, and one (1) page was withheld in full pursuant to applicable FOIA Exemptions. In accordance with *Vaughn v. Rosen*, 424 F.2d 820 (D.C. Cir. 1973), this declaration is being submitted in support of Defendant's motion for summary judgment, and provides the Court with a summary

2

of the administrative history of Plaintiff's requests and the FBI's justification for withholding

information in part or in full pursuant to FOIA Exemptions 3 and/or 7(E), 5 U.S.C. §§ 552(b)(3)

and/or (b)(7)(E).[2]

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUESTS

### *FBI FOIPA Request Numbers 1387588-000 and 1425730-000*

### Request Dated October 16, 2017:

(5)    By letter dated October 16, 2017, Plaintiff submitted via facsimile a FOIPA

request to the FBI seeking:

"Files relating to, describing or released to the Church Committee, including but not
limited to those labeled SENSTUDY, SENSTUDY 75, or Senate Study."

Plaintiff also requested a waiver of all fees associated with the processing of her request. (**Ex.**

**A.**)

(6)    By letter dated October 25, 2017, the FBI acknowledged receipt of Plaintiff's

FOIA request, and notified Plaintiff it had assigned her request FBI FOIPA Request Number

1387588-000. The FBI also informed Plaintiff for the purpose of assessing any fees, the FBI

determined as an education institution, noncommercial scientific institution or representative of

the news media requester, Plaintiff would be charged applicable duplication. Additionally, the

FBI informed Plaintiff she could check the status of her request and/or contact the FBI with any

questions at www.fbi.gov/foia. Furthermore, Plaintiff could appeal the FBI's response to the

DOJ's Office of Information Policy ("OIP") within ninety (90) days of its letter, contact the

---

[2] Plaintiff confirmed the specific challenges and it is contained in the Joint Status Report filed
with the Court on February 5, 2020 (ECF No. 17, page 1, 3rd full paragraph) and in the Joint
Status Report filed with the Court on June 12, 2020 (ECF No. 20, page 2, Footnote 2).

FBI's FOIA public liaison, and or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS"). **(Ex. B.)**

(7)     RIDS conducted a search of FDPS for records previously processed on the same subject matter, but for a different requester. RIDS successfully located 123 pages of preprocessed material (*i.e.* material previously released to another requester) and provided it to Plaintiff by letter dated November 28, 2017.[3]  The FBI informed Plaintiff she could appeal the FBI's response to the DOJ, OIP within ninety (90) days of its letter, contact the FBI's public liaison, and or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS"). **(Ex. C.)**

(8)     By letter dated December 8, 2017, Plaintiff filed an appeal with DOJ/OIP, challenging the FBI's November 28, 2017 determination. Specifically, Plaintiff challenged the FBI's decision to provide her previously processed documents. **(Ex. D.)**

(9)     By letter dated December 29, 2017, OIP acknowledged receipt of Plaintiff's appeal and informed Plaintiff OIP assigned appeal number DOJ-AP-2018-001741 to her appeal. **(Ex. E.)**

(10)    By letter dated February 16, 2018, OIP informed Plaintiff it was remanding Plaintiff's FOIPA Request Number 1387588 to the FBI for a further search for additional responsive records and if the FBI locates additional releasable records, it will send them to Plaintiff directly, subject to any applicable fees. Additionally, OIP advised Plaintiff she may appeal any future adverse determination made by the FBI. Finally, OIP advised Plaintiff if she had any questions regarding OIP's action on her appeal to contact OIP's FOIA Public Liaison; or

---

[3] Duplication fees were not assessed as they do not apply to preprocessed material.

4

if dissatisfied with this Office's action on her appeal, Plaintiff could file a lawsuit in federal district court. (**Ex. F.**)

(11) By letter dated March 8, 2018, the FBI acknowledged receipt of Plaintiff's remanded appeal. The FBI further advised Plaintiff she could check the status of her request and/or contact the FBI with any questions at www.fbi.gov/foia. (**Ex. G.**)

(12) By letter dated August 8, 2018, the FBI denied Plaintiff's fee waiver. The FBI informed Plaintiff fee waivers are determined on a case by case basis, pursuant to 5 U.S.C. § 552 (a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(i)-(ii), and Plaintiff failed to demonstrate the requirement that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government pursuant to 28 C.F.R. § 16.10(k)(i). Additionally, the FBI informed Plaintiff she could contact the FBI with any questions at www.fbi.gov/foia; appeal the FBI's response to OIP within ninety (90) days of the FBI's letter, and/or seek dispute resolution services by contacting OGIS. (**Ex. H.**)

(13) By an additional letter dated August 8, 2018, the FBI advised Plaintiff it had located approximately 18,615 pages[4] of records potentially responsive to the subject of her request, SENSTUDY 75. The FBI advised Plaintiff fees would be assessed at $565.00 for 38 CDs, or $925.75 for paper releases. Additionally, the FBI advised Plaintiff this was only an estimate and actual charges could be less. Though no payment was required at the time, the FBI informed Plaintiff she must notify the FBI within thirty (30) days from the date of its letter Plaintiff's willingness to pay the assessed fees. The FBI also provided Plaintiff an opportunity to reduce the scope of her request to reduce the cost and processing time associated with the

---

[4] It was later determined that most, if not all of the potentially responsive records had been accessioned to NARA prior to the receipt of Plaintiff's FOIA requests.

5

request. Finally, the FBI advised Plaintiff she could appeal the FBI's response to OIP within

ninety (90) days of its letter, contact the FBI's Public Liaison, and/or seek dispute resolution

services by contacting OGIS. (**Ex. I.**)

(14)    By electronic communication dated September 28, 2018, a member of the FBI's

negotiation team reached out to Plaintiff in an effort to discuss possibly narrowing the scope of

her request. In response to this request, on October 3, 2018, Plaintiff advised, "I hope to be in

touch soon. I'm considering my legal options in response to the fee waiver being improperly

denied." (**Ex. J.**)

(15)    By letter dated October 15, 2018, the FBI confirmed receipt of Plaintiff's October

3, 2019 e-mail exchange and advised Plaintiff among other things, that her request would be

processed as interim releases of approximately 500 pages per CD, and by letter dated August 8,

2018, she was informed of estimated fees associated with her request. Finally, the FBI advised

Plaintiff she could contact the FBI with any questions at www.fbi.gov/foia. The FBI has no

record of receiving any communications from Plaintiff in response to its October 15, 2018 letter.

(**Ex. K.**)

### Request Dated December 27, 2018:

(16)    By eFOIA letter dated December 27, 2018, Plaintiff submitted a FOIPA request to

the FBI seeking:

> "Files relating to, describing or released to the Pike Committee, including but not limited
> to those labeled HOUSTUDY, HOUSTUDY 75, or House Study as well as FBI file 62-
> 116464."

6

Plaintiff also requested a waiver of all fees associated with the processing of her request.[5]   She further advised if her fee waiver is denied, that should would like to limit her request to the two free hours of searching and 100 duplicated pages.  (**Ex. L.**)

(17)    By letter dated January 8, 2019, the FBI jointly acknowledged receipt of numerous FOIA requests submitted by Plaintiff, to include her December 27, 2018 request seeking records concerning Pike Committee.  The FBI advised Plaintiff that FOIPA Request Number 1425730-000 was assigned to her request seeking records concerning subject, Pike Committee. The FBI also informed Plaintiff for the purpose of assessing any fees, the FBI determined as an education institution, noncommercial scientific institution or representative of the news media requester, Plaintiff would be charged applicable duplication fees.  Additionally, the FBI denied Plaintiff's fee waiver.  The FBI informed Plaintiff fee waivers are determined on a case by case basis, pursuant to 5 U.S.C. § 552 (a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(i)-(ii), and Plaintiff failed to demonstrate the requirement that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government pursuant to 28 C.F.R. § 16.10(k)(i).  Further, the FBI advised Plaintiff unusual circumstances applied to the processing of her request.  The FBI further explained unusual circumstances included the following:

There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS.)

There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.

There is a need for consultation with another agency or two or more DOJ components.

---

[5] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI, online, through the FBI's public website, www.FBI.gov.

The FBI also advised Plaintiff these unusual circumstances would delay the FBI's ability to make a determination on her request. Finally, the FBI informed Plaintiff she could check the status of her request and/or contact the FBI with any questions at www.fbi.gov/foia; appeal the FBI's response to OIP within ninety (90) days of the FBI's letter, and/or seek dispute resolution services by contacting OGIS. (**Ex. M.**)

(18)    Plaintiff filed her Complaint in the instant action on January 30, 2019. (ECF No. 1)

(19)    In response to Plaintiff's request concerning, Pike Committee, RIDS conducted a search of FDPS for records previously processed on the same subject matter, but for a different requester. RIDS successfully located 631 pages of preprocessed material and provided it to plaintiff by letter dated May 16, 2019. Specifically, the FBI advised Plaintiff that 631 pages of records were reviewed, and 205 pages of records were released to another FOIA requester which were determined to be responsive to the subject of her request. No fees were assessed by the FBI for the release of this preprocessed material. (**Ex. N.**)

(20)    By letter dated August 15, 2019, the FBI provided an additional release of records to Plaintiff that were responsive to her request concerning SENSTUDY 75 and Pike Committee. The FBI advised that 382 pages of records were reviewed, and 150 pages of records were being released in full or part. Information was withheld pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E). Additionally, the FBI advised that it referred for consultation, records which originated with or contained information concerning other government agencies ("OGAs"). The FBI informed Plaintiff it would correspond with Plaintiff regarding this information when these consultations were finished. The FBI also informed Plaintiff that records which may have been responsive to her requests were destroyed and since this material could not

8

be reviewed, it is not known if it was responsive to her request. The FBI further advised Plaintiff records that may be responsive to her requests were transferred to NARA and she should direct a request to NARA concerning those records. The FBI supplied Plaintiff with a list of the files transferred to NARA. Further, Plaintiff was also advised she could appeal the FBI's determination to DOJ, OIP within ninety (90) days from the date of its letter. (Ex. O.)

(21)    By letter dated October 30, 2019, the FBI made its final release of records to Plaintiff in response to her requests for records concerning SENSTUDY 75 and Pike Committee. The FBI advised that 207 pages of records were reviewed, and 202 pages of records were being released in full or part. Information was withheld pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E). Additionally, Plaintiff was advised she could appeal the FBI's determination to DOJ, OIP within ninety (90) days from the date of its letter. (Ex. P.)

(22)    The FBI is including a *Vaughn* Index to explain where within its production of responsive records it withheld either in full or in part information pursuant to FOIA Exemption Coded Categories (b)(3)-1, (b)(7)(E)-2 and/or (b)(7)(E)-3 on the pages challenged by Plaintiff. The specific bates-numbered pages for which the Plaintiff is challenging withheld information pursuant to FOIA Exemption Coded Categories (b)(3)-1, (b)(7)(E)-2 and/or (b)(7)(E)-3 are as follows:    FBI 19-cv-00256 4-6, 11-14, 231-234, 332, 353-358, 361, 369, and 371-374. On bates-numbered pages FBI 19-cv-00256-231, 232, 233, 234, 332, 353-358, 361, and 369-374; the information withheld pursuant to (b)(3)-1, (b)(7)(E)-2 and/or (b)(7)(E)-3, is also withheld pursuant to non-contested FOIA Exemption Coded Categories (b)(6)-2, (b)(7)(C)-2 and/or (b)(7)(E)-1. (**Ex. Q.**)

(23)    The FBI processed all documents for which Plaintiff is challenging to achieve maximum disclosure consistent with the access provisions of the FOIA.    The FBI did not

9

withhold any reasonably segregable, non-exempt information.  Further description of the

information withheld, beyond what is provided in this declaration, could identify the actual

exempt information protected by the FBI.  The FBI numbered all pages of its production

consecutively as "FBI 19-cv-00256 – 1 through FBI 19-cv-00256-382".  Additionally, on the

Bates-numbered documents provided to Plaintiff, the FBI further categorized its application of

Exemptions to better explain the nature of the information withheld pursuant to the provisions of

the FOIA.  Specifically, the FBI applied numerical codes that coincide with various categories of

exempt information.  These coded categories are provided to aid the Court's and Plaintiff's

review of the FBI's explanations of the FOIA Exemptions it has asserted to withhold

information.  The coded, Bates-numbered page together with this declaration demonstrate that all

information withheld by the FBI is exempt from disclosure pursuant to the cited FOIA

Exemptions.

(24)    Each instance of information withheld pursuant to a FOIA Exemption is

accompanied by a coded designation that corresponds to the categories listed below.  For

example, if "(b)(3)-1" appears on a document, the "(b)(3)" designation refers to FOIA

Exemption 3 protecting information protected by statute.  The numerical designation of "1"

following the "(b)(3)" narrows the main category into a more specific subcategory, such as

information withheld pursuant to "50 U.S.C. Section 3024(i)(1)."

(25)    Listed below are the categories used to explain the FOIA Exemptions the FBI

asserted to withhold information, which Plaintiff is challenging:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
| --- | --- |
| CODED CATEGORIES | INFORMATION WITHHELD |
| **Exemption 3** | **Information Protected by Statute** |
| (b)(3)-1 | 50 U.S.C. Section 3024(i)(1) |
| **Exemption 7(E)** | **Law Enforcement Techniques and Procedures** |

| (b)(7)(E)-2 | Information Regarding Targets, Dates and Scope of Surveillance |
|---|---|
| (b)(7)(E)-3 | Specific Law Enforcement Technique |

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

(b)(3)-1 - NATIONAL SECURITY ACT OF 1947, 50 U.S.C. § 3024 (i)(1)

(26)     The FBI asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"). 50 U.S.C. § 3024(i)(1) provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods."[6]  As relevant to U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.  On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. See CIA v. Sims, 471 U.S. 159 (1985).

(27)     In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC")

---

[6] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1).  As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(1). In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[7] The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods.

(28) Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff. Therefore, the FBI is prohibited from disclosing such information under § 3024 (i)(1).[8]

(29) The FBI is asserting Exemption 3, at all times in conjunction with 7(E) to protect information that would reveal intelligence sources and methods. Specifically, information was protected under Exemption 7(E)-3 (Bates FBI 19-cv-00256-231-234) because unclassified intelligence sources and methods were dually employed as law enforcement techniques, procedures, or guidelines, and thus would qualify as both an intelligence source and method under Exemption 3 and a law enforcement technique under Exemption 7(E). Notably, § 3024 (i)(1) protects sources and methods regardless of whether they are classified. *See Sims*, 471 U.S. at 176.

---

[7] Intelligence Community Directive (ICD) 700, date June 7, 2012, at ¶ 2a.

[8] Although § 3024 (i)(1) does not impose a requirement to articulate harm, disclosure of this information presents a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.

(30)    In addition, information was protected asserting (b)(3) and (b)(7)(E)-1[9] on Bates pages FBI 19-cv-00256-332, 353-358, 361, 369 and 371-374. The FBI is invoking 50 U.S.C. § 3024(i)(1) to protect these file numbers because the mere fact that a file number of a designated intelligence source and method file classification is connected to a particular subject/target reveals operational intelligence source and method activity within the ambit of § 3024 protection. Per the expressed language of § 3024, Intelligence Community (IC) agencies, "shall" protect intelligence sources and methods.  The protection afforded by § 3024 is absolute, and IC components lack the discretion to release intelligence source and method information.

(31)    FBI file numbers contain the classification identifying the type of investigation/crime, an alpha associated to a specific investigative focus, the geographical prefix identifying the originating office, and the unique case number.  Release of intelligence file numbers would lead to exposure of the particular intelligence activity and method at issue and its nexus to a specific FBI intelligence program or sub-program.  Furthermore, disclosure of intelligence file numbers in the aggregate will enable an adversary to attribute any information released from the document to the particular file.  An adversary could then identify the specific intelligence activity applying a mosaic by supplying further missing pieces.  Hence, a particular mosaic of the activity begins to appear as more information is identified with the particular intelligence file leading to exposure of actual intelligence activities or methods.  Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1), provides that

---

[9] Plaintiff agreed to narrow the issues to be briefed only to Exemption 3, based on 50 U.S.C. § 3024(i)(1), and Exemption 7(E), regarding only information about targets, dates, and scope of surveillance and specific law enforcement techniques. The FBI asserted Exemption 3 in conjunction with Exemption 7(E) regarding sensitive file numbers and subfile names but is only defending Exemption 3 in this instance.

the Director of National Intelligence "shall protect from unauthorized disclosure intelligence sources and methods." This mandate is not discretionary. Per DNI authority and guidance, the FBI is one of 17 agencies comprising the IC, and as such, is bound by this legal mandate. The FBI determined that intelligence sources and methods would be revealed if the withheld file numbers were disclosed.

## EXEMPTION 7 THRESHHOLD

(32)     FOIA Exemption 7 exempts from mandatory disclosure records or information compiled for law enforcement purposes when disclosure could reasonably be expected to cause on of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552(b)(7).

(33)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.   Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.

(34)     Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purposes.

(35)     The records at issue were compiled in furtherance of the FBI's investigation of third-party subjects of investigative interest to the FBI or in the course of fulfilling its integrated

14

missions and functions as law enforcement, counterterrorism, and intelligence agency to include

performance of administrative and personnel functions. Considering these records were

compiled to document the FBI's investigations of potential crimes and/or possible threats to

national security, or in the course of fulfilling its integrated missions and functions as a law

enforcement agency, the FBI determined they were compiled for a law enforcement purposes.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(36)     5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for
> law enforcement investigations or prosecutions or would disclose guidelines for
> law enforcement investigations or prosecutions if such disclosure could
> reasonably be expected to risk circumvention of the law.

(37)     The FBI asserted Exemption (b)(7)(E) to protect information from these records,

the release of which would disclose techniques and/or procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement investigations

or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(38)     Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-

public investigative techniques and procedures utilized by the FBI to pursue its law enforcement

and intelligence gathering missions, and also to non-public details about techniques and

procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption

7(E) to protect the following categories of information.

(b)(7)(E)-2: INFORMATION REGARDING TARGETS, DATES AND SCOPE OF SURVEILLANCE

(39)     In Exemption category (b)(7)(E)-2, the FBI protected information concerning

locations, monitoring, and types of devices utilized in surveillances conducted by the FBI in

relation to the investigation at issue herein on FBI 19-cv-00256-4-6, and 11-14. The FBI utilized

15

these surveillances to obtain investigative intelligence relevant to its investigation of a third-party subject. The law enforcement techniques used to conduct these surveillances are the same techniques utilized by the FBI in current criminal and national security investigations. Certainly, it is publicly known that the FBI and other law enforcement agencies engage in different types of surveillance in investigations. However, disclosure of non-public details about when, how, and under what circumstances the FBI conducts surveillance would allow current and future subjects of FBI investigations and other potential criminals to develop and utilize countermeasures to defeat or avoid different types of surveillances, thus rendering the techniques useless to the FBI and other law enforcement agencies. Accordingly, because the disclosure of this information could reasonably be expected to reveal non-public details about law enforcement techniques that are still being used by the FBI and risk circumvention of the law, the FBI has properly withheld this information pursuant to Exemption 7(E).

### (b)(7)(E)-3: SPECIFIC LAW ENFORCEMENT TECHNIQUES

(40)    In Exemption category (b)(7)(E)-3, the FBI protected information pertaining to sensitive law enforcement techniques and procedures the FBI uses for criminal and national security investigations. Revealing the specific details of how these techniques and procedures are employed, in what situations they are most effective, the types of targets against which these techniques are employed and the nature of the information/evidence gleaned via the use of these techniques and procedures, would be detrimental to the FBI's ability to effectively utilize these techniques and procedures. Release of this information would allow criminals and those who threaten the national security of the United States the ability to develop countermeasures to circumvent the FBI's use of these techniques and procedures, greatly reducing their effectiveness. The use of these techniques and procedures within the investigative records at issue is not known, and further description of these techniques and procedures in this context

16

could result in circumvention of these techniques and procedures by investigative subjects.  As

further disclosure would undoubtedly compromise crucial law enforcement techniques and

procedures, and severely hamper the FBI's law enforcement efforts to detect and apprehend

individuals who seek to violate the United States' criminal and national security laws, the FBI

withheld this information pursuant to Exemption 7(E).[10]

## SEGREGABILITY

(41)    As discussed in ¶ 4 *supra*, Plaintiff is challenging exemptions on 24 pages of FBI

records.  Of these 24 pages, 23 pages were Released In Part (RIP) and 1 page was Withheld In

Full (WIF).  Each of these categories is discussed below to further address segregability.

      a.   Pages RIP.  Following its segregability review, RIDS determined 23 pages could

           be released in part with redactions per the identified FOIA exemptions herein.

           These pages comprise a mixture of material that could be segregated for release

           and material that was withheld as release would trigger foreseeable harm to one or

           more interests protected by the cited FOIA exemptions on these pages.

      b.   Pages WIF.  Following its segregability review, RIDS determined 1 page required

           withholding in its entirety as it contained one or more of the Exemptions being

           challenged by Plaintiff herein.  RIDS determined all information on the page was

           covered by one or more of the cited FOIA exemptions; therefore, there was no

           information that could be reasonably segregated for release without triggering

           foreseeable harm to one or more of the cited FOIA exemptions.

---

[10] Due to the nature of this information, any further description – should the Court request it - would need to be provided *in camera.*

## CONCLUSION

(42)    The FBI processed all records and released all reasonably segregable non-exempt information from the nine (9) documents, consisting of thirty (32) pages wherein Plaintiff is only challenging the FBI's assertion of Exemption Coded Categories (b)(3)-1, (b)(7)(E)-2 and/or (b)(7)(E)-3 on twenty-four (24) pages, that are responsive to her requests and are subject to FOIA. RIDS processed the records under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 3 and/or 7(E). The FBI carefully examined the documents and determined the information withheld from the challenged pages , if disclosed would reveal statutorily protected information and would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI has determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A - Q attached hereto are true and correct copies.

Executed this 1st day of September 2020.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

19